Good morning, Your Honors. Justin Howell on behalf of Appellants Michael Tucker and Robert Riddle. Your Honors, this case involves a very discreet issue, and that is whether or not the District Court erred in applying the concept of puffery to the plaintiff's omissions claims brought under the Missouri Merchandising Practices Act, or MMPA. The plaintiffs allege in this case that they purchased vehicles from GM, and in connection with the purchase of those vehicles, they spoke with sales representatives, they viewed Monroney stickers, which are stickers that go on the vehicles and are required by law to contain certain factual statements about things like fuel economy and engine performance, as well as they viewed advertisements that touted the reliability of the vehicles that GM sold. Will you remind me, were these new trucks that were purchased? I noticed they were purchased in the model year. I don't recall if they were new vehicles or not. Yes, Your Honor. I believe they were new vehicles purchased from GM dealerships. I thought the record reflects one was an independent non-GM dealership. Your Honors, I don't believe that is the case, but I don't think that that issue has any bearing on the District Court's decision. I'm just wondering, because the window stickers would be different in that case, correct, if they're used vehicles? I believe so, Your Honor. I believe there are different requirements for new vehicles under the law there. And those stickers are required by federal law, right, which details what has to be on those? Correct. And so they also viewed advertisements that touted the reliability of GM's vehicles. And the District Court, in its decision, in a one-paragraph analysis, dismissed plaintiffs' omission claims under the MMPA because it found that those advertisements constituted non-actionable puffery. Do you agree that the affirmative, alleged affirmative misrepresentations in the commercials were puffery? I don't think that the plaintiffs alleged that those advertisements were affirmative misrepresentations. If you look at the complaint in this case, the only claims that plaintiffs alleged were omission-based claims under the MMPA. And that's the entire reason why plaintiffs don't believe that the puffery analysis that the District Court applied in this case applies at all to plaintiffs' claims. And, in fact, the District Court relied solely on the GM anti-lock brake case in support of its decision. And if you look at the quote that the District Court quoted that case for, it is appropriate for a District Court to determine whether an alleged misrepresentation is a statement of fact or mere puffery on a Rule 12b-6 motion. And what's important about that case, and as the plain language of the quote demonstrates, is that the court in the GM anti-lock brake case applied its puffery analysis to an affirmative misrepresentation claim under the MMPA. And what's notable also about that case is that the plaintiffs in that case also separately asserted omissions-based claims under the MMPA. And the court in its separate analysis of those omission-based claims did not mention the concept of puffery at all. It wasn't a basis for its decision. Can you explain to me just logically how you can have a material omission if you don't have an affirmative statement? I mean, the omission has to be from some, in this case, commercial interaction between the parties, correct? Correct. So I think that's raised in the briefs. I just don't understand how you can omit something if you don't have an affirmative statement. And it's well established that puffery, if these are affirmative statements that are puffery, are barred. Those claims are barred. Well, I think if you look at the plain language of the MMPA, all it requires is the concealed- Practically, give me an example of when you would have a material omission without an affirmative statement. Well, I think, Your Honor, in the connection with the sale of a vehicle, if what we allege is true, that GM knew of this defect, it intentionally concealed the fact that the engine had defective piston rings that caused excessive oil consumption, and you go in and you go to purchase a car, I think it's reasonable for a consumer to assume that the car that they're purchasing is going to work. It's not going to break down. But we're dealing with the omission, so what would the dealer in that case have to say? I think they would have to affirmatively tell the buyer, either through the sales representative or through a notice, that the vehicle has a defect in the engine that's going to cause it to have engine damage. Let me ask you, what does the record show about were all vehicles defective, and did all vehicles consume excess oil, or just some of these models? No, the allegation is that all vehicles are defective, and in fact the- Did all vehicles burn excessive oil? Correct, Your Honor. That is the allegation, and the allegations in this case are based upon a related case and discovery obtained in that case, which actually is presently in trial, which is why I'm arguing this case before you now. Let's say not every vehicle had a defect. Would there still have to be a voluntary or a mandatory disclosure of those defects? And what is the threshold? That's a good question, Your Honor. I don't think. It just strikes me as odd to go into a car dealership, and instead of looking at the sticker and getting the usable sales pitch, you're going to get a list of every defect that's occurred in the car that the manufacturer is aware of. That just strikes me as unworkable. Yeah, I don't think that's what we're alleging here, Your Honor. I think the allegations in the complaint, for example, state that these- That could be a class certification issue. Correct, whether- That may defeat class certification. Correct, that could be an issue- Probably should, but- I'm sorry, Judge, for interrupting, but that could be an issue for predominance in the class certification analysis, but what we- It could be more than that. It's remedy, too. Correct, and damages, but what we've alleged- On the broader question, it strikes me that there could be omitted puffery. In other words, the alleged omission itself, if made, would be puffery. That would- But I don't think that's the case here. Well, logically, puffery, by its very essence, is an affirmative statement of opinion, and so that's not what- You didn't tell the consumer that this is not, in fact, the best vehicle on the market. Well, you didn't tell the consumer that- No, I mean, the omission has to be of a material fact, and if the omission had been affirmatively stated, it would have been puffery. Then it seems to me the district court's decision is sound. But I think the cases like Wright and Budach, which turned on all versus some vehicles and so forth, I think the pleading here seems to have overcome that defect of not specifying precisely what the material omission was. Well, and we also allege that the dealerships were sent technical service bulletins, identifying the defect to the dealerships, telling the dealerships that it had this problem with excessive oil consumption, but not directing the dealerships to disclose that. That's merits. But, Your Honor, I think the concept of puffery, like I said, is an affirmative statement of opinion such that it's essentially a defense where a reasonable consumer would not rely on that statement because they understand that statement to be a statement of opinion. You're saying the statute just creates a duty to disclose all facts that are material to a buyer's decision to buy, isn't that right, under the statute? That's what the plain language of the statute says. If you don't say anything, you can't puff. So it's not a puffery case. It's just a failure to disclose. Exactly, Your Honor. So that's the case. Correct. If puffery could be applied in an omission context, then a company would theoretically never have a duty to disclose anything because they could just simply stick to statements that this is the most reliable vehicle, this vehicle is superior to every other vehicle, and you would never have a material omission case, and it would greatly narrow the scope of those cases under the MMPA. And courts have expressly said that the MMPA is both written and to be construed broadly to serve its purpose of consumer protection. What pure failure to disclose case do you have? This pure failure to disclose. Yes, Your Honor. I mean, I think we cited the Hess case, for example, in our briefs, as well as other cases where material omissions and products were omitted. Nothing clouding the sky with also allegations that have to do with or relevant allegations that have to do with affirmative misrepresentations. Just plain old garden variety, vanilla, you didn't tell us cases, right? Right. And I think it's important. And Hess, is that what you said? Yes, Hess, which is 220 Southwest 3rd. But also, if you look at the cases relied upon by GM, every single one of those cases except for one, which Your Honor mentioned, the Budach case, the analysis involved applying the concept of puffery to affirmative misrepresentation claims under the MMPA. And in the Budach case, it's far from clear from the court's analysis. I think it just mentioned in one sentence that one allegation in the complaint constituted puffery. But it ultimately dismissed the plaintiff's claims under Rule 9b because the plaintiff failed to allege of specificity their claims. The district court unquestionably did not do that here, even though that issue was fully briefed by the parties. It declined to dismiss on that basis. And its only basis was on the advertisements, which, again, weren't the only statements that plaintiffs alleged that they were exposed to prior to the sale of their vehicle. How would you distinguish right, then? I think you touched on it earlier. But what's the key difference between right in this case? I'm sorry, Your Honor, can you? The difference between right in this case. Right? Let me look at that. But I believe, Your Honor, that case. Because that includes a couple paragraphs discussion of omission claims. Right. But I think the analysis in that case where it spoke about puffery, it applied that analysis to the affirmative misrepresentation claims. And if you look at the court's analysis in right of the omissions claims, there's no discussion of the concept of puffery at all. No, but they do talk about kind of the consequences of your argument. And that is that this kind of unfettered obligation to disclose all defects is just, forget, impossible to do in a commercial setting. And I don't think we're alleging, Your Honor, and you brought up a good point before, that this was a defect that GM knew. And, in fact, we allege in the complaint, through evidence obtained in the Northern District of California complaint, that they knew of this defect, that it applied to all vehicles with this engine going back to 2008. And, in fact, they had studied it. And they had tried to come up with ways to improve the oil consumption. And they admitted in internal documents that it wasn't helping. And so you have a defect that is clearly known, intentionally concealed, and it applies to all vehicles with that engine in them. And so I think this case is distinguishable from the case, or the hypothetical that you raised, where there may be a minor defect that's present in one vehicle, but not present in all vehicles. Well, in Wright, the court says it's unclear from the amended complaint what material fact was allegedly concealed from plaintiff in connection with his purchases. Correct. It's hard to speculate what different omissions might have been intended and finds them not sufficient. So I think that's not—I think you're pleading is better than that. Correct, Your Honor. I would agree with that. And unless there are any more questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you. Wait for the— Good morning, Your Honors. Amanda Berman from Crowell & Mooring on behalf of— Counsel. Okay. Defendant Appellee General Motors. Your Honor, we agree that there is one narrow issue raised in this appeal, and we think that the district court correctly dismissed the MMPA claim for lack of an actionable underlying statement. The Missouri case law is quite clear that that is a prerequisite for a successful fraudulent omission claim based on a defect. Fraudulent omission? This is broader than—the federal statute is broader than fraud. Your Honor, the MMPA lists a number of ways there can be a successful— And the MMPA is broader. Your Honor, we agree the MMPA fraudulent omission standard is a bit broader in certain respects, but the key point here is that there does have to be an actionable underlying statement. Now, plaintiffs have pointed to no case where there was not some actionable underlying statement. That's not clear from the face of the statute. Would you agree with that? I mean, I think there's an or in there. So which Missouri case so holds that you need an actionable statement to plead a case like your colleague here? Your Honor, by my count, there are at least six that are pretty squarely on point here, including Budach, including Wright. Well, you agree Budach was a Rule 9 case, right? Failure to specifically plead the allegations in the complaint? Your Honor, yes, but the court there—it was a Rule 9 case, but the court there rejected the suggestion that they could get past the Rule 9 barrier by pointing to affirmative statements that the plumbing products were superior and highest quality. In every one of the cases I'm pointing to, and these include Budach, Wright, this includes Williams, Johnson v. Honeywell, Dean, Fizer cited in footnote 5 of our brief, we're talking about cases where it was an MMPA omission claim and it was based on a product defect. And every single one of those cases failed, and I think that's really noteworthy. Wait, Wright had nothing to do with this fraud assertion. How do you prove fraud? The operative—Judge Whipple's operative discussion. Your Honor, respectfully, I don't think that's quite right. So in that case, the Western District of Missouri dismissed a fraudulent omission claim because there was no actionable underlying statement, only statements of puffery in the advertisement saying that the diffuser at issue, the scent diffuser was— Are you talking about—are you back to Hess? No, Your Honor, I'm talking about Wright. I couldn't follow that. Sure, Your Honor, I'm talking about Wright v. Bath & Body Works. So that's a case where it was about a scent diffuser, and the allegations were that there were defects in the functionality, design defects that the seller had failed to disclose. So very similar allegations there. And the court rejected the idea that simply failing to tell customers that some purchasers had complained of a defect could give rise to an MMPA omission claim. The plaintiff cannot state a claim based on defendant's failure to disclose that all scent ports were defective. That is this case, Your Honor. They cannot state a claim based on the failure to disclose. This case is they failed to disclose to all purchasers a material omission, a specific known defect. Your Honor, I don't really see a difference between the two cases in that regard. Okay, but I don't—you can't— Your Honor, I think it's noteworthy that they have not pointed to a single case where there was a successful defect-based omission claim. The one case that opposing counsel brought up was the Hess case, and that is frankly not at all analogous, Your Honor. It was about the sale of land without disclosing the fact of contamination of that land after a jury had concluded that there was an underlying affirmative duty to disclose. There were forms that the bank should have filled out stating the contamination that it had not done. It's not analogous. Isn't Wright different in one other way, and that is the pleading there, the plaintiffs admitted that not all products were defective. Hasn't that problem in Wright been cured by your colleagues pleading in this case? Haven't they pleaded around the cases you're citing? Your Honor, I'm— Yeah, don't the other cases also include affirmative claims based on affirmative misrepresentations? I mean, it looks to me like plaintiff's counsel has learned from the cases and arguably pleaded around them. Your Honor, I don't think they've overcome that, and I think they have a real 9B problem as well. If you zero in on paragraphs 25 to 41 of their complaint, those are the core allegations here about the trucks that these plaintiffs bought and what the assertions were. And frankly, they're very, very bland. They assert that they were purchased after seeing commercials, and they say that the commercials represented that the trucks were durable and reliable. Those are the only affirmative representations we have. They also say that they saw Monroney stickers. They don't specify any content of those stickers at all, any facts on those stickers that could be linked to the alleged defect, the overconsumption of oil that they allege here. And then they say that they spoke to sales representatives. They don't say anything about the content of those representations. And I did want to correct one thing that was said about the complaint, which is that, as I understand it, at least one of the dealers was independent. It had a name that indicates that it's not at all linked to GM, and the other was a Chevy franchisee dealer. And frankly, Your Honor, we didn't get there in the district court, but I think there's an agency problem there as well. Can statements made by a salesperson at a dealership be attributed to GM? But we don't need to get there because they don't specify the content, the who, what, when, where of the alleged representations at issue here. Let me come back to the broad point. It sounds like it's your view that the MMPA does not prevent the seller of a new product with knowledge of all kinds of actual likely defects from saying the basis of this sale is buyer beware. Your Honor, I don't think that there is any case law applying the MMPA that imposes a duty on a seller who knows that... For this case law, we just read statutes. Well, Your Honor, I would urge the court not to go further than the courts in Missouri have chosen to go here, and I think the right court explained the problem really well. It said that if you've got to tell a customer every time that there's been some complaints about a defect, that's an impossible duty. The Monroney stickers that Judge Coba has pointed to would have to have this entire list based on everything that folks had gone on the Internet and complained about. Well, but in this case, it's the allegation and the pleading is every single vehicle suffers from it. So he's avoided that problem here because a lot of the defects may be in 1%, 2%, random. There's no allegation here that... I mean, that's a different case than this one. Here it's every single engine that rolls out of the factory is defective. Your Honor, I... It seems to me that that's a different sort of obligation or a different sort of omission than every once in a while we get complaints about whatever. Your Honor, I don't think that's different. If you look at Wright, it was an allegation of a design defect in the scent diffusers across the board. I think it was in some of them. I thought the plaintiff there conceded some of them worked fine. Well, Your Honor, you know, here also, if you look at the complaint, we also see that, yes, there are litanies that they list of alleged online complaints. I don't think that they really have adequately alleged that every single GM truck sold, you know, over a particular period had this defect. I'm actually not sure that that is a fair statement based on the complaint. But the particular motor, I believe, was the allegation, right? Sorry, Your Honor? A particular engine, I believe, was the subject of the complaint. Isn't that right? Not every truck, but... It's not every model of truck, Your Honor. It's certain specific models of trucks. But I don't... I'm not sure that it's fair to characterize the complaint as saying every single truck with particular engines has the defect. But even if it is, Your Honor, you know, I would then point the court to, for example, in the Williams case, the claim there was that there were defective heat pumps. And the statements at issue were that the heat pumps were reliable and built to last. Very similar statements to the only affirmative statements that are pointed to here in GM's advertisements. And the court rejected the argument that the fact that other specific factual assertions were made about those heat pumps, for example, that there was a compressor, that they had been well tested. They said even that's not sufficient to give rise to an actionable MMPA claim here. You know, the court said, and I think this language speaks volumes, that there is no case finding an unfair practice under the MMPA in a similar situation. Again, Your Honor, what we are asking is that this court does not go further than the courts applying this in Missouri have been willing to go. And, yes, could you read that MMPA language better? You can call it dicta, but Hess just screams out to the opposite. Well, Your Honor, again, the facts there. Hess's proof that the jury found common law fraud, Hess's proof of common law fraud was sufficient to prove the fourth element of the MMPA claim that Chase engaged in unlawful conduct. The definition of material in that statute is broader than the materiality requirement of common law fraud. The regs define omission as a material fact. Is any failure to disclose facts known to him or her? This imposes a broader duty on sellers. I mean, how you can say that the MMPA, as construed by the Supreme Court of Missouri, is limited to common law fraud cases in the face of that is beyond me. Your Honor, we're not saying there's an – Judge Limbaugh descended from Hess, which criticized one of my opinions under federal law, so I probably would have been with dissenters, but it's governing law in this case. Your Honor, that was a fundamentally different case. There was no claim defect there. The claims were that there was a duty to disclose the contamination that the bank had. The court agreed that there was a duty. I know it's factually distinguishable, but we're talking law, not facts. Facts, you can win on the merits. Your Honor, but even after that decision, we still have a steady line of cases from the district courts of Missouri saying, for a fraudulent omission claim, you have to have an actionable underlying statement that is not puffery. And we don't have that here. They haven't identified a statement that is actionable. And I would point this court to its definition of what is puffery in the American Italian Pasta Company, where it explains it's not just exaggerated or boastful statements, but also vague and subjective claims of superiority, like saying something is a national favorite or even quality. And then in the Williams case, that was applied. But this doesn't roll an omission into a material misrepresentation. Aren't they one and the same in your interpretation? I mean, if you have a material representation that's necessary for an omission case, essentially those two claims become one. Is that the argument, that even though the statute has an or, essentially it's a material representation and it's misleading or fraudulent because it omits something. And that's the only way to do it, to go through the misrepresentation that's either inaccurate or incomplete. Your Honor, I think that's correct. And I think you got to the heart of this case at the beginning when you asked opposing counsel, doesn't it have to be omitted from something? An omission, by its nature, the simple definition of the word, you are leaving something out of something else. So there has to be an affirmative statement that itself is actionable. Unless there's an affirmative duty to disclose things outside that specific conversation. For example, Judge Loken's buyer beware situation. And Your Honor, that's what the courts have declined to go there, to say that there is this open, freestanding, affirmative duty to disclose. You know, if I walk into a toy store to buy my son his tenth robot. And there's a robot there and I go by it and the seller thinks, you know, I've had a few complaints about this, I'm not going to tell her. Under the MMPA and the way it's been applied, that would not be actionable. There is not a freestanding duty. Would you agree on the face of the statute that would be a reasonable interpretation? Your Honor, I believe so. You know, the statutory language seems broad in certain regards. It says, in connection with the sale or advertisement. But there still has to be some affirmative act of selling, of advertising, something said from which something is omitted. It simply, you know, it doesn't make logical sense to call it an omission otherwise. It sounds a lot more like fraudulent concealment. And that is not the claim that they brought here. You know, they brought warranty claims, which were dismissed for other reasons. And they brought a common law omission claim, which was dismissed as redundant of the warranty claim. You know, we're looking at a very limited thing here. The MMPA's omission prong. And the courts have consistently declined to apply that. You're back to fraud. And I'm looking at the MMPA key operative provision. Use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment or omission of any material fact. Now, that is so much broader than common law fraud. Your Honor, if you. It's completely, you know, it's. Your Honor, if you divorced the phrase omission of any material fact from the whole rest of that paragraph, I agree. It would be incredibly broad. And that's what the courts have declined to do. And Wright's saying that creates an impossible duty to disclose. It occurs to me that your statutory argument is an interesting one. But it's different from what the district court said. The district court called this puffery, right? Well, what the district court. It's not puffery. What you're saying is that there has to be, that it's a matter of statutory construction. It doesn't make any sense to. Well, Your Honor, what the district court said that we agree with was there has to be an actionable underlying statement. And the only statements here were puffery. So that's where puffery comes into it. And, you know, Your Honor, I see that my time is up. And I would just urge the court that if it doesn't agree with this construction of the MMPA, which we think has been very consistent under Missouri law, there's still a Rule 9b problem here. And the district court walked right up to that. Didn't go there because it dismissed on this other basis. But we think that that has been well briefed. And it's pretty clear that the complaint, which doesn't give the who, what, when, and where, doesn't meet the Rule 9 standard. Thank you, Your Honors. Thank you. I should have announced it to start that this is the one. The one COVID prudential matter that we're retaining plus masks in the audience. Your Honors, I think you all touched on it, that the plain language of the statute is intentionally broad. The Missouri legislature intended for that language to be broad. The case law has held that the language is broad, is to be construed broadly. And that's Hawkins v. Nestle, 309F sub 3rd, 696. And Your Honor touched on the fact that their interpretation of the statute would greatly narrow omissions-based claims. What was that case? That was Hawkins v. Nestle, 309F sub 3rd. Is that in your briefs? It should be, Your Honor. And it was pointed to in the briefing in the district court as well. But their interpretation of the statute would greatly... I don't see it in your table of authorities. Please give us a 28-day letter. Okay, we will do that, Your Honor. But it would greatly narrow the scope of omission-based claims under the MMPA, essentially turning those claims into affirmative misrepresentation claims. And that simply just doesn't square with the plain language of the statute or the case law. And none of the cases that they rely upon in the context of an omission claim state that there must be an affirmative underlying misrepresentation accompanying that omission. With respect to the Rule 9b argument, I do think there is some discrepancy in the district courts. I don't think this court has addressed the issue as to whether or not an omission claim must meet the strict requirements of Rule 9b. But I don't think the court needs to decide that issue. I think this court has cautioned that Rule 9b is to be construed in the context of notice, albeit heightened notice. And I think it's quite frankly disingenuous for GM to assert they don't have notice at the base of these claims when they've litigated materially identical claims where we cite deposition testimony in our complaint from a related case that has made it through a motion to dismiss, through a motion to summary judgment, and is presently being tried as we speak. And so I would urge the court to overturn the district court's decision. Was your position on Rule 9b? Well, the 9b, because I had a case out of Minnesota that points pretty strongly toward not narrowly confining Rule 9b, but it was an MMPA case. What are you saying? When you say reverse, what are you saying on the 9b? Your conclusion followed immediately on a- I apologize, Your Honor, if that was unclear. No, no, I just want to clarify. No, I think you should overturn the district court's decision with respect to the basis asserted for dismissing plaintiffs' MMPA claim and declined to entertain the GM's invitation to examine the case under Rule 9b. As you read the district court's opinion, it would be open if we remit. It would not be decided, or are you saying- No, I think that that claim was fully briefed in front of the district court, and the district court declined to dismiss plaintiffs' claims on that basis. And so there's no reason to- Wait, wait, come on. Alternative grounds or no alternative grounds? You only need one ground to reach a decision. As you read the opinion, the memorandum in order, was it decided? It was not, Your Honor. Okay. Thank you, Your Honor. So is there any reason to- If we said nothing on the issue, it would be open? I think the district court would have the discretion to reopen that issue, Your Honor. But I don't think it's warranted. Well, to decide what it didn't decide the first time around because it didn't think it needed to. Perhaps, Your Honor. Thank you. Thank you, counsel. The case has been thoroughly and carefully briefed and argued, and we'll take it under advisement.